**IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

MAJOR MIKE WEBB, d/b/a  MAJOR )
MIKE  WEBB FOR VA, a/k/a FRIENDS )
FOR MIKE WEBB, d/b/a MAJOR MIKE )
WEBB FOR CONGRESS, d/b/a ANGELS )
OF LIBERTY, )
    ***Petitioner, Pro Se,*** )
   )
v. )
   )
ALPHONSO LOPEZ, JOSE QUIROZ, in )
Individual and official capacity, COUNTY )
OF ARLINGTON, ARLINGTON )
DEMOCRATS, IVY CRIMMINS LLC, )
doing business as INFINITY )
APARTMENTS, CAPITAL )
INVESTMENT ADVISORS LLC, doing )
business as INFINITY APARTMENTS, )
GRETCHEN REINEMEYER, in individual )
and official capacity, ARLINGTON )
COUNTY ELECTORAL BOARD (ACEB), )
JOHN O'BANNON, in individual and )
official capacity, STATE BOARD OF )
ELECTIONS (SBE),  META )
PLATFORMS, INC., and TWITTER, INC., )
    ***Respondents.*** )

Case: 1:23–cv–01239
Assigned To : Reyes, Ana C.
Assign. Date : 4/27/2023
Description: Pro Se Gen. Civ. (F–DECK)



RECEIVED
Mail Room

APR 28 2023

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## VERIFIED COMPLAINT

1.  Comes now Petitioner/Major Mike Webb, doing business as Major Mike Webb for VA, a
    candidate for State Delegate in Virginia's newly designated Third House District ("Third
    District"), the former 49th House District ("Fighting 49th"), also known as Friends for Mike
    Webb and Major Mike Webb for Congress, to commence an action against named
    Respondents, averring allegations under state and federal law.

2.  Petitioner incorporates an Affidavit in Support of Verified Complaint by reference.

### Jurisdiction

3. Paragraphs 1 to 2 are incorporated by reference.

4. In relevant part, 28 U.S.C. § 2201 provides that any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

5. Jurisdiction is proper under 28 U.S.C. § 1331, because the controversy involves a federal question.

6. In addition, jurisdiction is proper under 28 U.S.C. § 1332(a)(1), because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . citizens of different States".

## Nature of the Case

7. Paragraphs 1 to 6 are incorporated by reference.

### *A Man's Home Is His Castle*

8. The courts of the Commonwealth have recognized "the time-honored maxim that a man's home is his castle," and have held that not even religious freedom "'in the long run. . . come from this kind of license to each sect to fix its own limits, but comes of hard-headed fixing of those limits by neutral authority with an eye to the widest freedom to proselyte compatible with the freedom of those subjects to prose*lying (sic)* pressures.'" *Hall v. Commonwealth*, 188 Va. 72 (1948) (quoting *Douglas v. City of Jeannette*, 319 U.S. 157 (1943)). (emphasis added) *But see Douglas*, 319 U.S., at 157[1].

---

[1] "A common sense test as to whether the Court has struck a proper balance of these rights is to ask what the effect would be if the right given to these Witnesses should be exercised by all sects and denominations. If each competing sect in the United States went after the householder by the same methods, I should think it intolerable. If a minority can put on this kind of drive in a community, what can a majority, resorting to the same tactics, do to individuals and minorities? Can we give to one sect a privilege that we could not give to all, merely in the hope that most of them will not resort to it? Religious freedom, in the long run, does not come from this kind of license to each sect to fix its own limits, but comes of hard-headed fixing of those limits by neutral authority with an eye to the widest freedom to proselyte compatible with the freedom of those subject to *proselyting* pressures." *Id.* (emphasis added)

9. Yet, under color of law, with a task force of officers from the Sheriff's Department, directed by Respondent Jose Quiroz, currently a candidate for election Scott Broadbeck, "Two announce candidacy in upcoming races as Ingrid Morroy announces retirement," *ARLnow*, December 8, 2022; *see also Press Release*, "Sheriff Beth Arthur Announces a New Chief Deputy," *Arlington*, August 23, 2022,  Petitioner, who is identified by Respondents Arlington County Election Board (ACEB) and State Board of Elections (SBE) as an "Independent – *In Process*" , with no Republicans apparently running in the Third House District,  Staff, "Elections June 20, 2023 - Democratic Primary Election," *Arlington*, https://vote.arlingtonva.gov/Elections (accessed April 25, 2023), was evicted from his apartment residence, on or about March 14, 2023, while, within a reasonable time, on or about March 20, 2023, Respondent Alfonzo Lopez had announced on social media, "It's official - I'm excited to have filed as a candidate to represent the new 3rd House of Delegate District!! Alfonso Lopez, "It's official. . . ," *Facebook*, March 20, 2023[2].

### ***Scorched Earth and Onslaught***

10. As detailed further below, under allegations of fraud, Respondent Lopez has amassed a considerable war chest, while presenting the claim, known to be false, that he had intended to run in the 49th House District, a fatal defect, according to Election Officials, when soliciting signatures for petitions to qualify for the ballot, under Va. Code § 24.2-521(B)(4).

11. Petitioner avers that named Respondents had been participants in a civil conspiracy, and/or members of a criminal enterprise, for the purposes of supporting the election of Arlington Democrats in November 2023, opposed to Petitioner's efforts to be a candidate for House Delegate in Virginia's Third House District.

---

[2] "I turned in all of my forms to the amazing Charley Conrad at noon today. Looking forward to appearing on the ballot in Arlington & AlexandriaVA.gov. Alexandria Democratic Committee Arlington Dems". *Id.*

### *Fourteenth and Fifteenth Amendments*

**12.** By birth record, Petitioner is a Negro, and the Court may take judicial notice that under

Section 1 of the *Fifteenth Amendment*, "[t]he right of citizens of the United States to vote

shall not be denied or *abridged by the United States or by any state on account of race, color,*

*or previous condition of servitude*."

**13.** Further, the Court may take judicial notice that, pursuant to 52 U.S. Code § 10305,

"[w]henever. . .(1) a court has authorized the appointment of observers under section

10302(a) of this title for a political subdivision; or (2) the Attorney General certifies with

respect to any political subdivision named in, or included within the scope of, determinations

made under section 10303(b) of this title, unless a declaratory judgment has been rendered

under section 10303(a) of this title, that. . . (A) the Attorney General has received *written*

*meritorious complaints from residents, elected officials, or civic participation organizations*

*that efforts to deny or abridge the right to vote under the color of law on account of race or*

*color*, or in contravention of the guarantees set forth in section 10303(f)(2) of this title are

likely to occur; or (B) in the Attorney General's judgment (considering, among other factors,

whether *the ratio of nonwhite persons to white persons registered to vote within such*

*subdivision appears to the Attorney General to be reasonably attributable to violations of the*

*14th or 15th amendment* or whether substantial evidence exists that *bona fide* efforts are

being made within such subdivision to comply with the *14th or 15th amendment*), the

assignment of observers is otherwise necessary to enforce the guarantees of the *14th or 15th*

*amendment*; the Director of the Office of Personnel Management shall assign as many

observers for such subdivision as the Director may deem appropriate" (emphasis added), and

Petitioner certifies that a copy of this affidavit shall be provided to the U.S. Attorney

General.

## Claims

### *Count One: Racketeering (Extortion)*

14. Paragraphs 1 to 13 are incorporated by reference.

15. Under 18 U.S.C. § 1961(1)(A), "'racketeering activity' means (A) any act or threat involving. . . extortion", and, under 18 U.S.C. § 1951(a), a predicate offence under the federal racketeering statute, 18 U.S.C. § 1961(1)(B), "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."

16. Under 18 U.S.C. § 1962(a), "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

17. Under 18 U.S.C. § 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

18. Under 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any

of the provisions of subsection (a), (b), or (c) of this section."

19. Respondents Alfonso Lopez, Ivy Crimmins LLC, doing business as Infinity Apartments, and

Capital Investment Advisors LLC, doing business as Infinity Apartments, Jose Quiroz,

participants in a conspiracy and/or members of criminal enterprise, on or about March 14,

2023, did, in violation of 18 U.S.C. § 1951(a), "obstruct[], delay[], or affect[] commerce or

the movement of any article or commodity in commerce, . . . by . . . extortion", and/or

"attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to"

Petitioner, and/or his lawful "property in furtherance of a plan or purpose to do anything in

violation of this section", by enforcing an unlawful eviction, under color of law, to assist the

political campaign for re-election of Respondent Lopez, which he would officially announce

six days later, on March 20, 2023 on social media, as referenced in the Affidavit in Support,

filed herewith,  shall be fined under this title or imprisoned not more than twenty years, or

both", a predicate offense under the federal racketeering statute.

20. Racketeering, in violation of 18 U.S.C. § 1951(a), is a predicate offense under the federal

racketeering statute, 18 U.S.C. § 1961(1)(B).

### *Count Two: Racketeering (Mail Fraud)*

21. Paragraphs 1 to 20 are incorporated by reference.

22. As alleged in the Affidavit in Support, with particularity, Respondent Lopez, did, as a

participant in a conspiracy and/or as a member of a criminal enterprise, in violation of 18

U.S.C. § 1341, engage in "a scheme to defraud," and conduct in which such scheme or

artifice did "contemplate the use of the mails as an essential element", *Pereira v. U.S.*, 347

U.S. 1 (1954) (citing *U.S. v. Young*, 232 U.S. 155 (1914), specifically representing to

residents, voters donors and competitors, as a leader in the legislature, that he was seeking

election in the 49th  House District, a misrepresentation of a material fact, at least according

to Respondents ACEB and SBE for purposes of invalidating signature petitions, when he knew, or should have known, that he would be seeking election in the Third House District, with intent to deceive, placing Petitioner in detrimental reliance thereupon, resulting in the rejection of his signature petitions by Respondents ACEB and SBE, and impeding his early attempts to qualify for the November ballot.

23. Mail fraud arising from this averment is a predicate offense under the federal racketeering statute, as to Respondent Lopez, 18 U.S.C. § 1961(1)(B), and, as to Respondents Gretchen Reinemeyer, John O'Bannon, ACEB and SBE, jointly, severally, or individually, under18 U.S.C. § 1962(d), "[i]t shall be unlawful *for any person to conspire to violate any of the provisions* of subsection (a), (b), or (c) of this section."

### *Count Three: Racketeering (Spoliation of Evidence)*

24. Paragraphs 1 to 23 are incorporated by reference.

25. In that Respondents Jose Quiroz and County of Arlington, as participants in a conspiracy and/or as member of a criminal enterprise, did, in violation of under 18 U.S.C. § 1519, "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case," a predicate offense under the federal racketeering statute, 18 U.S.C. § 1961(1)(B), specifically replying to a request for documents under the *Virginia Freedom of Information Act (VFOIA)*, Va. Code 2.2-3700, *et seq.*, stating, "Arlington County has reviewed its files and has determined there are no responsive record(s) to your request", Petitioner did, as a candidate committee and individually, suffer actual and direct injury arising from the inability to further document the dispatching of

almost two dozen law enforcement officers to enforce an unlawful eviction, while, "[t]he acts

of a subordinate done in compliance with an unlawful order given him by his superior are

excused and impose no criminal liability upon him unless the superior's order is one which a

man of ordinary sense and understanding would, under the circumstances, know to be

unlawful, or if the order in question is actually known to the accused to be unlawful." *U.S. v.*

*Calley*, 22 U.S.C.M.A. 534 (1973).

### *Count Four: Racketeering (Retaliation Against a Witness)*

26. Paragraphs 1 to 25 are incorporated by reference.

27. As averred, with particularity, in the Affidavit in Support, Respondents Lopez, Quiroz, Ivy

Crimmins LLC, doing business as Infinity Apartments, and Capital Investment Advisors

LLC, doing business as Infinity Apartments, did, as participants in a conspiracy and/or as

members of a criminal enterprise, in violation of to 18 U.S.C. § 1513, a predicate offense

under the federal racketeering statute, 18 U.S.C. § 1961(1)(B), retaliate against a known

whistleblower, *Webb v. Dep't of the Army*, Civil Action 1:22-cv-02236 (UNA) (D.D.C. Oct.

7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in damage to the reputation of

Petitioner and his political campaign committee.

### *Count Five: Racketeering (Witness Tampering)*

28. Paragraphs 1 to 27 are incorporated by reference.

29. As averred, with particularity, in the Affidavit in Support, Respondents Lopez, Quiroz, Ivy

Crimmins LLC, doing business as Infinity Apartments, and Capital Investment Advisors

LLC, doing business as Infinity Apartments, did, as participants in a conspiracy and/or as

members of a criminal enterprise, in violation of 18 U.S. Code § 1512(a)(1), engage in

witness tampering, a predicate offense under the federal racketeering statute, 18 U.S.C. §

1961(1)(B), conduct directed against a known whistleblower, *Webb v. Dep't of the Army*,

Civil Action 1:22-cv-02236 (UNA) (D.D.C. Oct. 7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in damage to the reputation of Petitioner and his political campaign committee.

### Count Six: Racketeering (Attempted Murder)

**30.** Paragraphs 1 to 29 are incorporated by reference.

**31.** As averred, with particularity, in the Affidavit in Support, Respondents Lopez, Quiroz, Ivy Crimmins LLC,  doing business as Infinity Apartments, and Capital Investment Advisors LLC, doing business as Infinity Apartments,  did, as participants in a conspiracy and/or as members of a criminal enterprise, in violation of state law, engage in conduct to attempt to murder Petitioner, a predicate offense under the federal racketeering statute, 18 U.S.C. § 1961(1)(A), conduct directed against a known whistleblower, *Webb v. Dep't of the Army*, Civil Action 1:22-cv-02236 (UNA) (D.D.C. Oct. 7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in damage to the reputation of Petitioner and his political campaign committee.

### Count Seven: Racketeering (Transnational Terror)

**32.** Paragraphs 1 to 31 are incorporated by reference.

**33.** As averred, with particularity, in the Affidavit in Support, all named Respondents,  including Arlington Democrats, as participants in a conspiracy and/or as members of a criminal enterprise, in violation of 18 U.S.C. § 2332b, a predicate offense, under 18 U.S.C. § 1961(1)(G), or, in the alternative under 18 U.S.C. § 1962(d), as to Petitioner, did engage in a conspiracy to commit transnational terror, conduct directed against a known whistleblower, *Webb v. Dep't of the Army*, Civil Action 1:22-cv-02236 (UNA) (D.D.C. Oct. 7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in damage to the reputation of Petitioner and his political campaign committee.

### *Count Eight: Racketeering (Conspiracy to Commit Murder/Manslaughter)*

**34.** Paragraphs 1 to 33 are incorporated by reference.

**35.** Under 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

**36.** Just as, under 18 U.S.C. § 1961(1)(A), any crime involving murder under state law is a predicate offense under the federal racketeering statute, under the laws of the Commonwealth, specifically Va. Code § 18.2-30, "[a]ny person who commits aggravated murder, murder of the first degree, murder of the second degree, voluntary manslaughter, or involuntary manslaughter, is guilty of a felony", and, even if found by a reasonable trier of fact that the conduct of the internet trolls, *i.e.*, Duffy Taylor, on Facebook, and FlexAble, on Twitter, was at least reckless, it was conducted, nonetheless, in violation of 18 U.S.C. § 2261A, conforming to stalking, in character, and constituting a felony,

**37.** As averred, with particularity, in the Affidavit in Support, Respondents Twitter, Inc. and Meta Platforms, Inc., as participants in a conspiracy and/or as members of a criminal enterprise, did, in violation of state laws, *i.e.*, aid and abet an anonymous user, specifically "Duffy Taylor" on Facebook, and "FlexAble" on Twitter, in an attempt to incite suicide, *see Commonwealth v. Carter*, 474 Mass. 624 (2016), by a victim known to be afflicted with a major depressive disorder, and a veteran, known to be at increased risk for suicide.

**38.** Petitioner, at all relevant times, was a candidate for political office, and "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office", *Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971).

**39.** Accordingly, Respondents Twitter, Inc. and Meta Platforms, Inc. did, in attempts, conspire, in as defined under in 18 U.S.C. § 1962(d), in conduct proscribed under 18 U.S.C. §

1961(1)(A), as to Petitioner, conduct directed against a known whistleblower, *Webb v. Dep't of the Army*, Civil Action 1:22-cv-02236 (UNA) (D.D.C. Oct. 7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in damage to the reputation of Petitioner and his political campaign committee.

**40.** Of at least probative value, both Respondents Twitter, Inc. and Meta Platforms, Inc. were active partners in the government response to the global public health crisis.

### *Count Nine: Racketeering (Conspiracy to Commit Retaliation)*

**41.** Paragraphs 1 to 39 are incorporated by reference.

**42.** Under 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

**43.** As averred, with particularity, in the Affidavit in Support, Respondents Twitter, Inc. and Meta Platforms, Inc., as participants in a conspiracy and/or as members of a criminal enterprise, did, engage in conduct, both through "Duffy Taylor", on Facebook, and "FlexAble", on Twitter, as well as through disabling Petitioner's social media accounts, engage in conduct conforming to a character of retaliation, in violation of 18 U.S.C. § 1513, a predicate offense under the federal racketeering statute, 18 U.S.C. § 1961(1)(B), against a known whistleblower, *Webb v. Dep't of the Army*, Civil Action 1:22-cv-02236 (UNA) (D.D.C. Oct. 7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in damage to the reputation of Petitioner and his political campaign committee.

**44.** Of at least probative value, both Respondents Twitter, Inc. and Meta Platforms, Inc. were active partners in the government response to the global public health crisis.

### *Count Ten: Racketeering (Conspiracy to Commit Tampering)*

**45.** Paragraphs 1 to 44 are incorporated by reference.

**46.** Under 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any

of the provisions of subsection (a), (b), or (c) of this section."

47. As averred, with particularity, in the Affidavit in Support, Respondents Twitter, Inc. and

Meta Platforms, Inc., as participants in a conspiracy and/or as members of a criminal

enterprise, did, engage in conduct, both through "Duffy Taylor", on Facebook, and

"FlexAble", on Twitter, as well as through disabling Petitioner's social media accounts,

engage in conduct conforming to a character of witness tampering, in violation of 18 U.S.C.

§ 1512, a predicate offense under the federal racketeering statute, 18 U.S.C. § 1961(1)(B),

against a known whistleblower, *Webb v. Dep't of the Army*, Civil Action 1:22-cv-02236

(UNA) (D.D.C. Oct. 7, 2022), *on appeal* Record No. TBD (U.S. 2023) and witness, in

damage to the reputation of Petitioner and his political campaign committee.

48. Of at least probative value, both Respondents Twitter, Inc. and Meta Platforms, Inc. were

active partners in the government response to the global public health crisis.

### *Count Eleven: Unjust Enrichment*

49. Paragraphs 1 to 48 are incorporated by reference.

50. As averred, with particularity, in the Affidavit in Support, Respondent Lopez did accrue an

unjust enrichment, specifically official qualification for the November ballot by Respondents

Reinemeyer, O'Bannon, ACEB and SBE, jointly, severally, or individually, while they had

engaged in tortious conduct against the political campaign committee of Respondent, an

equitable remedy that would "enable a court of equity to do justice and to prevent one tenant

from becoming enriched at the expense of another", *De Benveniste v. Aaron Christensen*

*Family LP*, 278 Va. 317 (2009) (citing *Butler v. Hayes*, 254 Va. 38 (1997) (citing *Shotwell v.*

*Shotwell* ,202 Va. 613 (1961)).

### *Count Twelve: Recission*

51. Paragraphs 1 to 50 are incorporated by reference.

52. As averred, with particularity, in the Affidavit in Support, Respondent Lopez did engage in conduct, *i.e.*, soliciting donations for a political race in which he knew, or should have known, he would not run as a candidate in the 49th House District, with at least the acquiescence of Respondents Reinemeyer, O'Bannon, ACEB and SBE, jointly, severally, or individually, while they had engaged in tortious conduct against the political campaign committee of Respondent, and to the actual and direct injury of his only known political opponent in the election in Virginia's Third House District.

53. Accordingly, a court would be authorized to award an equitable remedy through recission, as to all funds fraudulently raised by Respondent Lopez.

### *Count Thirteen: Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)*

54. Paragraphs 1 to 53 are incorporated by reference.

55. As averred, with particularity, in the Affidavit in Support, Respondent Lopez did engage, as a participant in a conspiracy and/or as a member of a criminal enterprise, with all other named Respondents, including Arlington Democrats, in conduct, in violation of 42 U.S.C. § 1985(1), to "conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof", and "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

56. As averred, with particularity, in the Affidavit in Support, Respondent Lopez did engage, as a participant in a conspiracy and/or as a member of a criminal enterprise, with all other named Respondents, including Arlington Democrats, to "conspire. . ., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or

hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws", and/or did "conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, *from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States*; or to injure any citizen in person or property *on account of such support or advocacy*". 42 U.S.C. § 1985(3). (emphasis added)

57. "[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators". 42 U.S.C. § 1985(3).

58. Specifically, as averred with particularity in the Affidavit in Support filed herewith, Respondent Quiroz, during a climate when "Republican candidate, Tim Griffin, running for the Virginia House of Delegates in the 53rd district, is facing scrutiny about where he lives and if he is eligible to run for office", Anna McDougall, "VA House of Delegates candidate facing scrutiny over place of residence," *WXFR*, April 26, 2023, did, to the direct benefit of Respondent Lopez, dispatch a task force, to enforce an unlawful order of eviction against Petitioner, effectively running his competition out of town.

59. Specifically, as averred with particularity in the Affidavit in Support filed herewith, and further, without foundation in fact or law, Respondent Quiroz, directly on behalf of Respondents Ivy Crimmins, doing business as Infinity Apartments, and Capital Investment

Advisors LLC, doing business as Infinity Apartments, and accruing to the benefit of

Respondent Lopez, threaten Petitioner, a political candidate, with a charge of trespass, in

violation of Va. Code § 18.2-119, should he return to the premises operated by Respondents

Ivy Crimmins LLC,  doing business as Infinity Apartments, and Capital Investment Advisors

LLC, doing business as Infinity Apartments, while the nation's highest court has held that

"conduct. . . , which for any reason—whether it stems from time, place, or type of

behavior—materially disrupts. . . or involves substantial disorder or invasion of the rights of

others is, of course, not immunized by the constitutional guarantee of freedom of speech",

*Tinker v. Des Moines School District*, 393 U.S. 503 (1969), and Courts of the

Commonwealth have held that such major disruption is a requirement to sustain a charge of

trespass, under Va. Code § 18.2-119 on commercial property, *Pleasants v. Commonwealth*,

214 Va. 646 (1974).

60. While in one seminal case before Article III Courts, it had been held that "[n]egative answers

to the questions were calculated to deprive the insurer of an opportunity it was entitled to be

afforded of making investigations for itself and acquiring information of facts material to the

risk involved in granting the application for insurance", *New York Life Ins. Co. v. Stewart,* 69

F.2d 957 (5th Cir. 1934), specifically, as averred with particularity in the Affidavit in Support

filed herewith, Respondent County of Arlington did, in furtherance of the purpose of the

conspiracy, deny to Petitioner documents requested under the *VFOIA*, Va. Code 2.2-3700, *et*

*seq.*, documents to which he had been entitled under a codified statutory right, and in direct

and actual harm to his efforts to corroborate claims with evidence regarding the unlawful

conduct.

61. Specifically, as averred with particularity in the Affidavit in Support filed herewith,

Respondents Reinemeyer, O'Bannon, ACEB and SBE did create an unlawful obstacle, in

tortious interference to Petitioner's early qualification for the November ballot, as was his

statutorily codified right under Va. Code Va. Code § 24.2-521(B)(4), and depriving voters

and residents in Arlington to choices for candidates in the November elections.

### Count Fourteen: Civil Conspiracy

**62.** Paragraphs 1 to 61 are incorporated by reference.

**63.** "Under Virginia law, the elements of a common law civil conspiracy are (i) an agreement

between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a

lawful purpose by unlawful means, which (iii) results in damage to plaintiff" through an

overt action done pursuant to the agreement. *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619

(W.D. Va. 2015) (quoting *William v. AES Corp.*, 28 F.Supp.3d 553 (E.D.Va.2014);

*Skillstorm, Inc. v. Elec. Data Sys.*, LLC, 666 F.Supp.2d 610 (E.D.Va.2009)".

**64.** As averred, with particularity, in the Affidavit in Support, Respondent Lopez, with all other

named Respondents,  including Arlington Democrats, did engage, as a participant in a

conspiracy, for the purpose of tortious conduct to the detriment of Petitioner, individually,

and as a candidate committee,  resulting in direct and actual harms therefrom.

### Count Fifteen: Business Conspiracy

**65.**  Paragraphs 1 to 64 are incorporated by reference.

**66.** "Virginia Code §§ 18.2-499 and 18.2-500 provide a statutory scheme establishing criminal

and civil remedies for persons injured in their trade, profession, or business by two or more

other persons acting purposefully, willfully, and maliciously", and "[s]everal courts have

held that the civil remedies of these sections are applicable only when the malicious conduct

is directed to one's business." *Penthouse Int'l, Ltd.*, 521 F. Supp., at 1204 (citing *Federated

Graphics Companies, Inc. v. Napotnik*, 424 F.Supp. 291 (E.D.Va., 1976); *Moore v. Allied*

*Chemical Corporation*, 480 F.Supp. 364 (E.D.Va., 1979)).

67. As averred, with particularity, in the Affidavit in Support, Respondent Lopez, with all other named Respondents, including Arlington Democrats, did engage, as a participant in a conspiracy, against the political campaign committee of Petitioner, and, through willful, purposeful and malicious conduct did, through libel, slander and other tortious conduct, do direct and actual damage to the same, entitling Petitioner to treble damages in redress under Va. Code § 18.2-500.

### Count Sixteen: Tortious Interference with a Business Expectancy

68. Paragraphs 1 to 67 are incorporated by reference.

69. As averred, with particularity, in the Affidavit in Support, Respondent Lopez, with all other named Respondents, including Arlington Democrats, did engage, individually, jointly and/or severally, in tortious conduct in interference with Petitioner's political campaign committee, entitling Petitioner to award of damages therefor.

### Count Seventeen: Libel/Slander

70. Paragraphs 1 to 69 are incorporated by reference.

71. As averred, with particularity, in the Affidavit in Support, Respondent Lopez, with all other named Respondents, including Arlington Democrats, did engage, individually, jointly and/or severally, did engage in conduct intended to "slandering him, . . . subject[] him to humiliation, embarrassment, mental anguish, and severe emotional distress", and upon similar facts, Courts of the Commonwealth have found, as to one plaintiff, that defendants had "conspir[ed] to injure his business reputation, unlawfully demoting, and constructively terminating his employment". *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332 (E.D. Va. 1987).

**72.** Specifically, as averred in the Affidavit in Support, to the most direct benefit to Respondent Lopez, through a very public eviction, under allegations of nonpayment, as to Respondents Quiroz, the County of Arlington, Ivy Crimmins LLC, doing business as Infinity Apartments, and Capital Investment Advisors LLC, doing business as Infinity Apartments, did, immediately after Petitioner had sought to qualify for the November ballot, directly, and maliciously, engage in tortious conduct in interference with Petitioner's political campaign committee, entitling Petitioner to award of damages therefor.

**73.** Specifically, as averred in the Affidavit in Support, to the most direct benefit to Respondent Lopez, Respondents Twitter, Inc. and Meta Platforms, Inc., did, maliciously, permit an anonymous internet troll to engage in publishing content designed to discredit, slander and humiliate Petitioner, and, of at least probative value, in relation to a job offer from the Defense Intelligence Agency (DIA), currently the subject of litigation. *Webb v. DoD*, Docket Number DC-3443-18-0299-I-1 (MSPB 2018); *Webb v. Dep't of the Army*, Civil Action No. 1:22-CV-02236-UNA (D.C. 2023), *aff'd* Record No. 22-5292 (U.S. 2022), on petition for cert. Record No. TBD.

**74.** Specifically, as averred in the Affidavit in Support, to the most direct benefit to Respondent Lopez, Respondents Twitter, Inc. and Meta Platforms, Inc., did, Respondents Reinemeyer, O'Bannon, ACEB and SBE did continue a long pattern, dating back to Petitioner's first campaign in Northern Virginia, a run for Congress in Virginia's 8th Congressional District, attempt to impede his qualification for the November ballot, in a jurisdiction, and against a political party that has publicly boasted that "[n]ow and again, analysts will refer to the determined and wildly successful Arlington Democrats in battle-hardened military terms", that "[o]nslaught, commando, and scorched earth come to mind", and that "[t]hose are

usually employed in relation to the fall campaign when yet another Republican, an "independent" who is really a Republican, or a real independent (often a pesky candidate who finds a way onto the ballot almost every year) is about to be drubbed in an election in the small but intensely political county just across the Potomac from the nation's capital." Cragg Hines, "Arlington Dems Pour It On, Boost "Regular" Dem Mary Kadera to Big Victory in School Board Caucus Over "Insurgent Candidate," *Blue Virginia*, May 26, 2021.

75. Specifically, as averred in the Affidavit in Support, to the most direct benefit to Respondent Lopez, in violation of 18 U.S.C. § 1519, a predicate offense under the federal racketeering statute, 18 U.S.C. § 1961(1)(B), as well as a deprivation of a right to equal protection and due process, Respondents Quiroz and County of Arlington have refused to respond to a request presented under the *VFOIA*, Va. Code 2.2-3700, *et seq.*, blocking his access to documentary evidence regarding the dispatching of almost two dozen law enforcement officers to enforce an unlawful order and malicious prosecution, *i.e.* his eviction from his apartment residence, under the public appearance of being evicted for failure to pay rent.

### *Count Eighteen: VFOIA*

76. Paragraphs 1 to 75 are incorporated by reference.

77. As averred, with particularity, in the Affidavit in Support, in accordance with Va. Code § 2.2-3704(A), with few exceptions, "all public records shall be open to citizens of the Commonwealth, representatives of newspapers and magazines with circulation in the Commonwealth, and representatives of radio and television stations broadcasting in or into the Commonwealth during the regular office hours of the custodian of such records", and "[a]ccess to such records shall be provided by the custodian in accordance with this chapter by inspection or by providing copies of the requested records, at the option of the requester."

78. As averred, with particularity, in the Affidavit in Support, in accordance with Va. Code §

2.2-3704(B)(3), "[a]ny public body that is subject to this chapter and that is the custodian of the requested records shall promptly, but in all cases within five working days of receiving a request, provide the requested records to the requester", or, in this instance, inform the requester in writing that "[t]he requested records could not be found or do not exist"; "[h]owever, if the public body that received the request knows that another public body has the requested records, the response shall include contact information for the other public body."

79. As averred, with particularity, in the Affidavit in Support, in accordance with Va. Code § 2.2-3713(A), "[a]ny person, including the attorney for the Commonwealth acting in his official or individual capacity, denied the rights and privileges conferred by this chapter may proceed to enforce such rights and privileges by filing a petition for mandamus or injunction, supported by an affidavit showing good cause", and "[s]uch petition may be brought in the name of the person notwithstanding that a request for public records was made by the person's attorney in his representative capacity."

80. Yet, on or about March 15, 2023, Respondent The County had advised Petitioner that it possessed no records regarding the cost of dispatching four patrol cars and almost two dozens law enforcement officers to his former residence, and the "proffered explanation is unworthy of credence", *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981), while "[f]ailure to respond to a request for records shall be deemed a denial of the request and shall constitute a violation of this chapter", Va. Code § 2.2-3704 (E), for which Petitioner demands injunctive and/or mandamus relief.

81. Petitioner's civil rights have been violated, having been deprived of information to which he is rightfully entitled under the *VFOIA*, Va. Code 2.2-3700, *et seq.*, as to Respondent County

of Arlington, and also as to Respondents Reinemeyer, O'Bannon, ACEB and SBE, with

regard to their efforts to block his qualification for the November ballot, as well as arising

from the actions of Respondent Quiroz, enforcing an unlawful order, entitling him, therefor,

to redress in an award of attorney fees, under 42 U.S.C. §§ 1983 and 1988.

### *Count Nineteen: Injunctive Relief*

**82.** Paragraphs 1 to 81 are incorporated by reference.

**83.** As averred above, and with particularity in the Affidavit in Support, Respondent County of

Arlington has unlawfully withheld documents releasable under the *VFOIA*, Va. Code 2.2-

3700, *et seq.*, entitling Petitioner to injunctive relief therefor, but further, Respondents

Reinemeyer, O'Bannon, SBE and ACEB have engaged in tortious interference to impede

Petitioner's qualification for the November ballot, accruing a benefit, in unjust enrichment, to

the political campaign of Respondent Lopez, if only in primacy of placement on the

November ballot, for which Petitioner seeks relief, with retroactive application.

**84.** In addition, Petitioner is entitled to injunctive relief against Respondent Lopez arising from

his tortious conduct, and against Respondent Quiroz regarding an unlawfully issued threat of

charge for trespass at the properties of Respondents Ivy Crimmins LLC and Capital

Investment Advisors, as further explained below.

### *Count Twenty: Declaratory Relief*

**85.** Paragraphs 1 to 84 are incorporated by reference.

**86.** Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction, . . . any

court of the United States, upon the filing of an appropriate pleading, may declare the rights

and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought", and "[a]ny such declaration shall have the force and

effect of a final judgment or decree and shall be reviewable as such."

87. As averred, with particularity, in the Affidavit in Support, Respondents Reinemeyer, O'Bannon, ACEB and SBE have engaged in tortious interference against Petitioner's political candidate committee to deny him qualification for the November ballot since January, accruing a benefit to Respondent Lopez in a political climate in which it has been acknowledged that, "[f]or the vast majority of the 140 seats in the General Assembly, 'the primary is really the election,' says David Ramadan, a former member of the House of Delegates, now a professor of practice at the Schar School of Public Policy at George Mason University", and he says, "Whoever wins the primary is the person who's going to win the general, because those districts are now either Republican or Democrat." Margaret Barthel, "For Most of Northern Virginia, The Primary Is The Election For General Assembly Seats," DCist, April 25, 2023, and in a community where a former biological warfare planner, acknowledged to have been is "against current government efforts and recommendations for safety during the COVID-19 pandemic," Staff, "Democrat: Mary Kadera," *Progressive Voters Guide*, September 15, 2021, https://progressivevotersguide.com/virginia/2021/general/marykadera?language_content_entity=en (October 21, 2021), was overwhelmingly defeated by a former high school science teacher, in a year in which the safe reopening schools had been one of the main issues, but only during the Arlington Democrat party caucus. Scott McCaffrey, "Are Arlington candidates playing the angles on school-reopening issue?" *Arlington Sun Gazette/Inside NOVA*, April 15, 2021.

88. Accordingly, Petitioner seeks declaratory relief to acknowledge his early qualification for the November ballot two months before Respondent Lopez had officially announced his campaign.

**89.** Similarly, as to Respondent Quiroz, who had authorized his officers to threaten Petitioner

with an unlawful application of the trespass provisions in the criminal code, *i.e.* Va. Code §

18.2-11, Petitioner is entitled to declaratory relief to establish, in line with precedent, that a

charge of trespass can only be issued at a commercial property where there is a patron

complaint, *see Hall*,  188 Va., at 72, as well as a significant disruption of business, where the

accused is engaged in free speech, or a right guaranteed under the *First Amendment.  See*

*Tinker*, 393 U.S., at 50, and *Pleasants*, 214 Va., at 646, (1974).

### *Count Twenty-One: Fraud*

**90.** Paragraphs 1 to 89 are incorporated by reference.

**91.** Courts have held that "mere acquiescence or silence or failure of an officer to perform a duty

does not make one a participant in a conspiracy *unless he acts or fails to act with knowledge*

*of the purpose of the conspiracy 'and with the view of protecting and aiding* it," *Luteran v.*

*U.S.*, 93 F.2d 395 (8th Cir. 1937) (quoting *Burkhardt v. U.S.*, 13 F.2d 841, 842 (6th Cir.

1926), and yet, with the acquiescence and complicity of Respondents Reinemeyer,

O'Bannon, ACEB and SBE, Respondent Lopez has been permitted to solicit donations for a

race in the 49th House District, when he knew, or should have known that his race for re-

election would be in the redesignated Third House District, a representation he continued to

perpetuate to the public through his official campaign website.

**92.** "A party alleging fraud must prove by clear and convincing evidence (1) a false

representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to

mislead, (5) reliance by the party misled, and (6) resulting damage to him", Thompson v.

Bacon, 245 Va. 107 (1993) (citing *Winn v. Aleda Constr. Co.*, 227 Va. 304 (1984), and

"[c]lear and convincing evidence is such proof as will establish in the trier of fact a firm

belief or conviction concerning the allegations that must be established. Id. (citing *Walker Agency, Inc. v. Lucas*, 215 Va. 535 (1975)).

93. As averred, with particularity, in the Affidavit in Support, in a detrimental reliance upon the representations of his elected representative, and at the hands of Respondents Reinemeyer, O'Bannon, ACEB and SBE, who have, as averred above, engaged in tortious interference with his efforts to qualify for the November ballot, Petitioner has incurred direct and actual damages, entitling him to damages therefor.

94. Further, as averred, with particularity, in the Affidavit in Support, in a detrimental reliance upon representations regarding nonpayment made by Respondents Ivy Climmins LLC and Capital Investment Advisors LLS, Petitioner remitted demanded sums, with no itemized invoice, except for a claim of legal fees, and, under duress, threatened with eviction, which eviction, even with payment of the sums, and Petitioner incurred actual and direct damages, nonetheless, through eviction for his apartment residence.

### *Count Twenty-Two: Malicious Prosecution*

95. Paragraphs 1 to 94 are incorporated by reference.

96. "In order to be liable on a claim for malicious prosecution, 'process must be issued for the purpose of bringing the accused before a court, an indictment must be returned, or the person must be arrested'", *Mayberry v. Ememessay, Inc.*, 201 F.Supp.2d 687 (2002) (quoting *Almy v. Grisham, et al.*, 55 Va.Cir. 401(2001)), and, a process having been issued, on or about December 9, 2022, for Petitioner to appear before a court, on grounds, presented by Respondents Ivy Crimmins LLC and Capital Investment Advisors LLC, under a claim of nonpayment, presented as an attachment first on or about December 14, 2022, in a friendly "Reminder", and threatening eviction on or about December 16, 2020, if payment had not

been remitted in full, which sums were timely paid by Petitioner in full, as averred, with particularity, in the Affidavit in Support.

97.  As averred, with particularity, in the Affidavit in Support, in a detrimental reliance, Petitioner, on or about January 9, 2023, was presented with a second notice, demanding payment of legal fees, in the amount of $300.00, in variance to the original amount represented as $218.00, in the December 14, 2022 notice, and threatening eviction on or about December 16, 2020, if payment had not been remitted in full which sums were timely paid by Petitioner in full.

98.  As averred, with particularity, in the Affidavit in Support, in a detrimental reliance, Petitioner, after being placed with a false sense of security, on or about March 7, 2023, after having paid all due rent amounts, an eviction notice was placed upon the apartment residence door of Petitioner, demanding that he vacate the premises no later than March 14, 2023, a matter about which, orally to Petitioner, Respondents Ivy Crimmins LLC and Capital Investment Advisors LLC claimed falsely to lack any knowledge therefor, and, in prejudice to the time remaining to Petitioner to comply with the court notice, had informed Petitioner that they would look into the matter, which did not occur.

99.  As averred, with particularity, in the Affidavit in Support, in a detrimental reliance, Petitioner, was, under color of law, forcibly evicted from his apartment residence on March 14, 2023, and six days later, within a reasonable time, Respondent Lopez made his official announcement to seek election in the Third House District, Alfonso Lopez, "It's official. . . ," *supra*, having his only challenger physically removed from a physical residence in the district.

### *Count Twenty-Three Detinue/Replevin*

100.   Paragraphs 1 to 99 are incorporated by reference.

101.    Traditionally, courts have observed that "[w]hen a marshal, upon a writ of attachment on

*mesne* process, takes property of a person not named in the writ, the property is in his official

custody, and under the control of the court whose officer he is, and whose writ he is

executing; and. . .  the rightful owner cannot maintain an action of replevin against him, nor

recover the property specifically in any way, except in the court from which the writ issued."

*Lammon v. Feusier*, 111 U.S. 17 (1884) (citing *Freeman v. Howe*, 65 U.S. 450 (1860);

*Krippendorf v. Hyde*, 110 U.S. 276 (1884))[3].

102.    Hence, under the normal rule, an action to recover an alumni affinity floor mat of a value

of $450.00, admitted to have been taken without authority, since on or about September 29,

2021, by Respondents Ivy Crimmins LLC and Capital Investment Advisors LLC, as averred

with particularity in the Affidavit in Support, would lie against them—personal property for

which, under threat of a charge of trespass, in violation of Va. Code § 18.2-119, Respondent

Quiroz has, through his law enforcement officers, barred Petitioner from pursuing in person.

103.    Petitioner is entitled to the return of his property or the equivalent in monetary,

compensatory damages for the loss incurred.

104.    Additionally, as averred in the Affidavit in Support, Respondents Ivy Crimmins LLC and

Capital Investment Advisors LLC had, despite multiple complaints from residents regarding

stolen mail and parcels that had been left unattended in the mailroom, and at the door of

residents, while, on or about December 27, 2022, while Respondents Ivy Crimmins LLC and

Capital Investment Advisors LLC had been in the process of obtaining an unlawful eviction

---

[3] "The principle upon which those decisions are founded is, as declared by Mr. Justice MILLER in *Buck v. Colbath*, *supra*, 'that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control, for the time being, and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises.' 3 Wall. 334." *Id.*

order, a replacement iPhone from AT&T, delivered by Federal Express, and left at

Petitioner's apartment door residence, was also stolen, about which Petitioner was

immediately alerted when the perpetrator had deactivated his iPhone, an iPhone 13 Pro 1 TB

device, in an attempt to activate the new item, a gold iPhone 14 Pro 1 TB device, valued at

$1,499.00.

105.    Petitioner has never before had a package delivered to his apartment door, raising a

reasonable inference of suspicion as to why that package delivery had departed what had

been a regular course of dealing, and for which, in compensation for the loss, Petitioner seeks

damages therefor.

### Count Twenty-Four: Intentional Infliction of Emotional Distress

106.    Paragraphs 1 to 105 are incorporated by reference.

107.    "To survive, 'a complaint must contain factual matter, accepted as true, to 'state a claim

of relief that is plausible on the face'", *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)), and a claim is presumed to have "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged". *Twombly*, 550

U.S., at 544.

108.    Under American law, certainly, "[t]he term 'moral turpitude' refers to behavior 'that

shocks the public conscience as being inherently base, vile, or depraved'," *Uribe v. Sessions*,

855 F.3d 622 (4th Cir. 2017) (quoting *Mohamed v. Holder*, 769 F.3d 885 (4th Cir.

2014)(citations omitted), while "conduct deliberately intended to injure in some way

unjustifiable by any government interest is the sort of official action most likely to rise to the

conscience-shocking level," rebutting even a claim in defense of sovereign immunity. *Cty. of

Sacramento v. Lewis*, 523 U.S. 833 (1998), and some American courts have focused on the

heinousness of the underlying crime, or *actus reus*, see *Eisert v. Town of Hempstead*, 918 F.

Supp. 601 (E.D.N.Y. 1996)[4].

109.    "Under Virginia law, in an action for intentional infliction of emotional distress a plaintiff

must show that the defendant's conduct (1) is intentional or reckless; (2) offends generally

accepted standards of decency or morality; (3) is causally connected with the plaintiff's

emotional distress; and (4) caused emotional distress that was severe." *Hustler Magazine,*

*Inc. v. Falwell*, 485 U.S. 46 (1988) (citing *Falwell v. Flynt*, 797 F.2d 1270, n. 4 (1986)

(citing *Womack v. Eldridge*, 215 Va. 338 (1974))).

110.    The conduct by all named Respondents has been intentional and/or reckless, offending

standards of morality or decency, as averred above.

111.    "Bipolar disorder is, by definition, recurrent", and a condition that is "uncurable but

treatable." Samantha Boyd, "Security Report: Michael David Webb," U.S. Army, December

10, 2005.

112.    "Bipolar disorder (BD) is a severe chronic psychiatric disorder that has been associated

with cellular dysfunctions related to mitochondria, neurotrophin levels, and oxidative stress",

Bianca Pfaffenseller, *et al.*, *Impaired endoplasmic reticulum stress response in bipolar*

*disorder: cellular evidence of illness progression*, 17 Internat'l J. of Neuropsychopharm., pp.

1453–1463 (2014), doi:10.1017/S1461145714000443, and "[t]he correlation of stress and

adverse outcomes for those afflicted with depressive disorders has been even accepted by

---

[4] "[I]n cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts have generally found no threat of continuing criminal activity arising from conduct that extended over even longer periods." *Id.* (citing *U.S. v. Aulicino*, 44 F.3d 1102 (2d Cir.1995); *Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986 (E.D.N.Y.1995)).

notable fact checkers who had concluded, regarding Vince Foster, that "[t]he implication that his death was connected to an expectation of his giving testimony against the Clintons is equally false", that he "was distraught over accusations of malfeasance involving the White House Travel Office, and he had sought treatment for depression prior to his suicide", while "Foster consistently maintained that the Travel Office scandal was baseless." David Emery, "Did Vince Foster Shoot Himself 'Three Times in the Back of the Head' to Avoid Testifying Against Hillary Clinton?" *Snopes*, September 21, 2018.

113.    The Fourth Circuit has recently recognized that a mental or emotional disorder of itself is a "condition of clinically significant distress", and when "[l]eft untreated, . . .can cause, among other things, depression, substance use, self[-]mutilation, other self-harm, and suicide", *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), while one Massachusetts court had "conclude[d] that there was probable cause to show that the coercive quality of the defendant's verbal conduct overwhelmed whatever willpower the eighteen year old victim had to cope with his depression, and that but for the defendant's admonishments, pressure, and instructions, the victim would not have gotten back into the truck and poisoned himself to death", *Commonwealth v. Carter*, 474 Mass. 624 (2016), while, characterizing Petitioner's sincerely held beliefs as medical misinformation, Respondents have concededly acknowledged a dysphoric condition "that is characterized by debilitating distress and anxiety resulting from the incongruence". *Id.*

114.    Federal public health authorities have acknowledged for over a decade that Petitioner has a diagnosis of bipolar disorder, Cheryl J. Rawls, "Benefit Verification Letter," Department of Veterans Affairs, March 6, 2020, and, hence, incurred a severe emotional distress attributed to the conduct of Respondent.

115.    As noted by the Reviewing Court in *Carter*, 474 Mass., at 624, "[w]anton or reckless

conduct[:]

> "is conduct that creates a high degree of likelihood that substantial harm will result to another. It is conduct involving a grave risk of harm to another that a person undertakes with indifference to or disregard of the consequences of such conduct. Whether conduct is wanton and reckless depends either on what the defendant knew or how a reasonable person would have acted knowing what the defendant knew. If the defendant realized the grave risk created by his conduct, his subsequent act amounts to wanton and reckless conduct whether or not a reasonable person would have realized the risk of grave danger. Even if the defendant himself did not realize the grave risk of harm to another, the act would constitute wanton and reckless conduct if a reasonable person, knowing what the defendant knew, would have realized the act posed a risk of grave danger to another. It is not enough for the Commonwealth to prove the defendant acted negligently, that is, in a manner that a reasonably careful person would not have acted. The Commonwealth must prove that the defendant's actions went beyond negligence and amounted to wanton and reckless conduct as . . . defined . . . ." *Id.* (quoting *Model Jury Instructions on Homicide* 73 (2013)).

116.    And, Petitioner, a paternal grandson of a franchise martyr, a godson of a former House

Majority Whip and former President of the United Negro College Fund, a maternal grandson

of an immigrant who entered America through Ellis Island, escaping the Holocaust as a

Jewish man in Germany, a diagnosed major depressive, was made homeless, during

hyperthermia season, subjected to public ostracism and ridicule, and maliciously frustrated in

his good faith attempts, to which he is entitled by right, to gain qualification for the

November ballot, the very picture not of an American Dream, but a nightmare, which,

somehow, miraculously, he has survived.

## **Prayer for Relief**

### ***Lopez***

117.    Paragraphs 1 to 116 are incorporated by reference.

118.    For the reasons stated above, as to Respondent Lopez, Petitioner demands remedial relief

for averments under Counts One through Seventeen, Nineteen, Twenty-One and Twenty-

Four, and such other equitable relief as deemed proper by the court.

### *Quiroz*

**119.**    Paragraphs 1 to 118 are incorporated by reference.

**120.**    For the reasons stated above, as to Respondent Quiros, Petitioner demands remedial relief

for averments under Counts One to Ten, Thirteen to Seventeen, Nineteen, Twenty and

Twenty-Four, and such other equitable relief as deemed proper by the court.

### *County of Arlington*

**121.**    Paragraphs 1 to 120 are incorporated by reference.

**122.**    For the reasons stated above, as to Respondent County of Arlington, Petitioner demands

remedial relief for averments under Counts Thirteen to Twenty and Twenty-Four, and such

other equitable relief as deemed proper by the court.

### *Arlington Democrats*

**123.**    Paragraphs 1 to 123 are incorporated by reference.

**124.**    For the reasons stated above, as to Respondent Arlington Democrats, Petitioner demands

remedial relief for averments under Counts Eight to Ten, Thirteen to Seventeen, and Twenty-

Four, and such other equitable relief as deemed proper by the court.

### *Ivy Crimmins LLC and Capital Investment Advisors LLC*

**125.**    Paragraphs 1 to 124 are incorporated by reference.

**126.**    For the reasons stated above, as to Respondents Ivy Crimmins LLC and Capital

Investment Advisors LLC, Petitioner demands remedial relief for averments under Counts

One to Ten, Thirteen to Seventeen, and Twenty to Twenty-Four, and such other equitable

relief as deemed proper by the court.

### *Reinemeyer, O'Bannon, ACEB and SBE*

**127.**    Paragraphs 1 to 126 are incorporated by reference.

128. For the reasons stated above, as to Respondents Reinemeyer, O'Bannon, ACEB and SBE, Petitioner demands remedial relief for averments under Counts Eight to Seventeen, Ninetten to Twenty-One and Twenty-Four, and such other equitable relief as deemed proper by the court.

### *Meta Platforms, Inc. and Twitter, Inc.*

129. Paragraphs 1 to 128 are incorporated by reference.

130. For the reasons stated above, as to Respondents Meta Platforms, Inc. and Twitter, Inc., Petitioner demands remedial relief for averments under Counts Eight to Ten, Thirteen to Seventeen, and Twenty-Four, and such other equitable relief as deemed proper by the court.

### CERTIFICATION

Petitioner declares under penalty of perjury that no attorney has prepared or assisted in the preparation of this document.

Michael David Webb, 955 S. Columbus Street, #426, Arlington, Virginia 22204
Name of Pro Se Party (Print or Type)

_____ Executed on: ___4-27-23___ (Date)
Signature of *Pro Se* Party

Subscribed, acknowledged and sworn to before me, the undersigned Notary Public in the County

of __Arlington__ , in the Commonwealth of Virginia, this ___27___

day of __April__ , 20_23_ .

_____
NOTARY PUBLIC

My commission expires: __12/31/24__   Registration Number: __7864007__

Ramon Vallejos
Commonwealth of Virginia
Notary Public
Commission No. 7864007
My Commission Expires 12/31/2024